Port Richmond and Prohibition Park Electric Railroad Company, Appellant, *v.* The Staten Island Rapid Transit Railroad Company, Respondent.

*Intersection of railroads — electric street railroad, crossing a steam railroad — application of section 12 of the Railroad Law.*

The provisions of section 12 of the Railroad Law (Chap. 565 of 1892), providing for the determination by commissioners of the method of railroad intersections when the companies cannot agree, apply to the intersection of a steam railroad, at a street crossing guarded by gates working by means of an overhead chain, by an electric street railroad operated by an overhead trolley wire.

Appeal by the plaintiff, Port Richmond and Prohibition Park Electric Railroad Company, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of Kings county on the 2d day of March, 1893, upon a decision of the court dismissing the complaint, rendered after a trial by the court at the Kings County Special Term.

The action was brought to compel the defendant, the Staten Island Rapid Transit railroad, to remove the obstruction of a gate and its wires and chains to the operation of the plaintiff's electric road, and to permanently restrain the defendant from interfering with the plaintiff's road, cars, trolley and wires at a crossing, by erecting or maintaining a gate or otherwise.

The trial court made, among others, the following findings of fact :

" I. The plaintiff is a domestic corporation duly organized and existing under and by virtue of the laws of the State of New York, and is operating an electric surface railroad on a part of the shore road in the village of Port Richmond, New York.

" II. The defendant is a domestic corporation duly organized and existing under and by virtue of the laws of the State of New York, and for many years last past has been and is now operating a locomotive steam railroad which passes through said village.

" III. The route of the plaintiff's railroad crosses the track of the defendant's railroad on the shore road in said village.

" IV. For a long time prior to the organization of the plaintiff, and the construction of the plaintiff's railroad on the shore road, the

defendant had been crossing the shore road on grade, and had protected its said crossing by a ' Copeland' gate having four arms, two on each side of the tracks, operated by one crank, the four arms being connected by an endless chain which crosses the shore road on each side of the tracks fifteen feet eleven inches above the shore road when the gate is open.

" V. The plaintiff operates its railroad by means of a trolley overhead wire.

" VI. The plaintiff cannot string its trolley wire across the defendant's tracks and operate its cars across said tracks by the trolley system so long as defendant's ' Copeland' gate is in use. The stringing of said wire and the operation of the plaintiff's railroad by the trolley system are impossible unless the chain of said gate be broken, and the breaking of said chain renders said gate useless.

" VII. About the end of June, 1892, the plaintiff opened a negotiation with the defendant to obtain an agreement from the defendant giving it the right to string its wire and cross the defendant's tracks. While this negotiation was pending, and before the terms and conditions of crossing had been fixed, the plaintiff requested the defendant to disconnect the chain of its gate and permit the plaintiff's wire to be strung and its cars to be operated across the defendant's tracks temporarily, pending the settlement of the terms and conditions of crossing. The defendant complied with said request in or about the month of June, and the plaintiff operated its cars across the defendant's tracks by the trolley overhead system, between about July 3 and November 27, 1892, under said temporary permission granted by the defendant. The defendant's gate during that period was useless in consequence of the breaking of the chain. After the plaintiff had strung its wires and had begun to operate its cars across the defendant's tracks, through the courtesy of the defendant, it broke off the said negotiation, and no agreement of any kind has ever been made between the parties to this action with reference to the terms and conditions of crossing.

" VIII. On November 27, 1892, the defendant again connected its gate chain, and since that time the plaintiff has been unable to operate its cars across the defendant's tracks by means of the trolley system.

" IX. No application has been made to the court by the plaintiff

for the appointment of commissioners, as provided in section 12 of the Railroad Law."

The court found the following conclusions of law :

" I. That the defendant's gate was and is a lawful structure.

" II. That the plaintiff could not lawfully string its wires and operate its cars across the defendant's tracks without either agreeing with the defendant upon the terms and conditions of crossing or having the same fixed by commissioners appointed by the court, pursuant to section 12 of the Railroad Law.

" III. That the plaintiff obtained no permanent right of crossing the defendant's tracks by reason of the temporary permission to cross the same granted by the defendant in the latter part of June, 1892, and that the defendant's act in the reconnecting its gate chain in November, 1892, was proper and legal.

" IV. That the plaintiff has made no case for the interference on its behalf of a court of equity.

" V. That the complaint should be dismissed, with costs."

Section 12 of chapter 565 of the Laws of 1892, the General Railroad Law, provides as follows :

" 12. Every railroad corporation whose road is or shall be intersected by any new railroad, shall unite with the corporation owning such new railroad in forming the necessary intersections and connections, and grant the requisite facilities therefor ; and if the two corporations cannot agree upon the amount of compensation to be made therefor, or upon the line or lines, grade or grades, points or manner of such intersections and connections, the same shall be ascertained and determined by commissioners, one of whom must be a practical civil engineer and surveyor, to be appointed by the court, as is provided in the Condemnation Law ; and such commissioners may determine whether the crossing or crossings of any railroad before constructed shall be beneath, at or above the existing grade of such railroad, and upon the route designated upon the map of the corporation seeking the crossing, or otherwise."

*Alexander S. Bacon*, for the appellant.

*Tracy, Boardman & Platt*, for the respondent.

Pratt, J. :

We think the seventh finding of fact is sustained by the evidence. From that it follows that no agreement was reached between the companies as to the crossing.

If plaintiff cannot make a satisfactory arrangement it must apply under the Railroad Act, which we believe to be applicable.

The judgment must be affirmed, with costs.

Barnard, P. J., concurred; Dykman, J., not sitting.

Judgment affirmed, with costs.